IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

FILED_____ ENTERED
LOGGED_____ RECEIVED

'JUL 2 7 2015

AT GREENBELT
CLERK, U.S. DISTRICT COURT
BY ___ DISTRICT OF MARYLAND
DEPUTY

| | |
|---|---|
| UNITED STATES OF AMERICA | * |
| | * |
| | * |
| v. | *   Criminal No. PJM 15-0137 |
| | * |
| BENJAMIN R. BILIK | * |
| | * |
| Defendant | * |

### MEMORANDUM OPINION

Benjamin R. Bilik has appealed his conviction for possession of a weapon in violation of 36 C.F.R. § 2.4. following a bench trial before Magistrate Judge Thomas M. DiGirolamo. For the following reasons, the conviction is **AFFIRMED.**

### I.

At approximately 2:45 A.M. on March 11, 2014, U.S. Park Police Sgt. Daniels saw a black Chevrolet parked in a lot that was closed between midnight and 6 A.M. Daniels pulled up behind the vehicle and approached Bilik, who was the driver and sole occupant. During their conversation, Bilik told Daniels that he bought the vehicle to travel between Towson University in Baltimore, where he was a student, and his residence in Washington, D.C.

As Daniels and Bilik spoke, Daniels detected an odor of marijuana coming out of the vehicle. He asked Bilik to get out of the vehicle and, after Bilik exited, asked him "if he had any weapons or anything on him." Bilik reached down and handed Daniels a *Leatherman* tool. Daniels then asked Bilik whether he had "smoked any weed" and Bilik admitted to smoking marijuana. Daniels next asked whether there was marijuana in the vehicle and Bilik, admitting that the vehicle contained marijuana, directed Daniels to the rear seat. At that point, Officer

– 1 –

Harper arrived to assist. Daniels handcuffed Bilik and searched the vehicle while Harper watched Bilik.

During his search of the vehicle, Daniels found a cylinder, a zip lock bag, a marijuana crusher, and a vaporizer inside a book bag on the rear seat. The cylinder and the zip lock bag contained marijuana.

Daniels then searched the front of the vehicle and found a set of brass knuckles in the center console. During the trial, Daniels testified that the center console was located "directly between the passenger and the driver's seat" and was accessible by pressing a latch, lifting the armrest that covered the compartment area of the console. Daniels was unable to recollect where in the console he found the brass knuckles and whether there was anything else inside the console.

On March 16, 2015, the Magistrate Judge held a bench trial, finding Bilik guilty on all counts. He concentrated his comments on the weapon charge, noting that the regulation prohibited "possession of a weapon, trap, or net" and that "[p]ossession means exercising direct physical control or dominion with or without ownership over property." In addition, he found that possession must be with knowledge because "[y]ou cannot really exercise dominion over something, if you don't know it is there."

The Magistrate Judge found that Bilik knowingly possessed the brass knuckles because:

I can make reasonable inferences and, frankly, just apply plain common sense. The brass knuckles were found in the center console. That is an area of a vehicle generally where people do—well, first, they do have ready access to it. And that is an area of the vehicle where people do access on a regular and frequent basis, like a glove compartment. Had the brass knuckles been found like up under the wheel well, where people sometimes hide keys. Now, that is a different story, because you generally don't go searching around there. But center consoles, armrests, you lift up, and there is an area there where people store CDs or whatnot. But it is an area which is readily accessible and an area which generally people do access on a regular basis.

– 2 –

Trial transcript p. 42.

Other factors the Magistrate Judge took into consideration when he found Bilik guilty of possession of the brass knuckles were Bilik's admission that he bought the vehicle and Bilik's position in the driver's seat.

The Magistrate Judge imposed an $80.00 fine on Count One (possession of paraphernalia), a $35.00 fine on Count Two (failure to obey traffic control devices and posted signs), a $135.00 fine on Count Three (controlled substance possession), and a $200.00 fine on Count Four (possession of a weapon). Bilik timely filed this appeal, but only as to his conviction on Count Four.

## II.

"An appellate review conducted by a district court after a bench trial before a magistrate judge is not a trial de novo; rather, the district court utilizes the same standards of review applied by a court of appeals in assessing a district court conviction." *United States v. Bursey*, 416 F.3d 301, 305 (4th Cir. 2005) (citing Fed.R.Crim.P. 58(g)(2)(D)). When reviewing a conviction, the court should "assess challenges to the sufficiency of the evidence by viewing it—including all reasonable inferences to be drawn therefrom—in the light most favorable to the Government." *Id.* at 305-06. "Findings of fact made by the trial court are reviewed for clear error . . . ." *Id.* at 306. Accordingly, this Court, conducting appellate review, cannot substitute its opinion on whether the Government has proven its case beyond a reasonable doubt but has to defer to the Magistrate Judge's findings of fact, except for clear error.

## III.

Bilik was convicted of violating a regulation that prohibits "[p]ossessing a weapon, trap or net." 36 C.F.R. § 2.4. He argues that the Magistrate Judge did not have sufficient evidence to

find, beyond a reasonable doubt, that he knowingly possessed the brass knuckles and that the circumstantial evidence did not rise to the level of compelling evidence required to sustain a conviction because of several other reasonable explanations for the presence of the knuckles in the center console.

Bilik argues that his actions, admitting to possessing the narcotics and the *Leatherman* tool but not admitting to possessing or owning the brass knuckles, demonstrated that he was not aware of the presence of the knuckles. Although the law recognizes that possession can be actual or constructive, Bilik argues that the Government should have produced some evidence showing either that he knew the brass knuckles were inside the center console, that he touched them, that he owned them, or that anyone had seen him with them. Moreover, he argues that the Government never produced evidence demonstrating that he was the sole and exclusive owner or user of the vehicle. *See United States v. Blue*, 957 F.2d 106 (4th Cir. 1992).

According to Bilik, the only evidence produced by the Government, that brass knuckles were stored out of sight under a latched lid in the center console of a vehicle driven by Bilik, was insufficient to sustain the conviction. He notes that other convictions relied on more evidence. *See, e.g., United States v. Branch*, 537 F.3d 328 (4th Cir. 2008) (finding that the defendant's nervousness, lack of truthfulness, and the presence of drugs and cash supported a reasonable inference that he exercised control over the vehicle and was aware of its contents, including a weapon); *United States v. Gallimore*, 247 F.3d 134 (4th Cir. 2001) (upholding a jury verdict finding that the weapons belonged to the defendant because the jury could infer that the defendant had access to the weapons, which were found in a safe that also contained a briefcase with defendant's personal papers).

The Government emphasizes that possession convictions may be based on actual or constructive possession, *see United States v. Herder*, 594 F.3d 352, 358 (4th Cir. 2010), and that—based on the evidence that Bilik owned the vehicle, was alone, had possession of other items inside the vehicle, and was within reach of the brass knuckles—the Magistrate Judge made the reasonable, rational inference that he knowingly possessed the knuckles. The Government rejects Bilik's argument that it had to prove that he owned or was seen with the brass knuckles because ownership is a separate concept from possession and registration or title documents for knuckles do not exist. According to the Government, Bilik's argument that it must prove that he was the sole owner and user of the vehicle fails because the evidence, which shows that he was in control of the vehicle and possessed items inside it, was sufficient to convict Bilik of possession of the brass knuckles.

The Court agrees with the Government.

## IV.

The Fourth Circuit has held that constructive possession is "ownership, dominion, or control over the contraband or the premises or vehicle in which the contraband was concealed." *Herder*, 594 F.3d at 358. Although "[p]roof of constructive possession requires proof the defendant had knowledge of the presence of the contraband," constructive possession "may be established by either circumstantial or direct evidence." *Id.*

In *Herder*, a police officer followed Kinsey Cory Herder after he pulled out of a commuter carpool lot that was known to host drug activity and approached him in another parking lot. *Id.* at 355-56. During their interaction, a drug detection dog positively alerted to the presence of narcotics and the officer subsequently searched the vehicle, discovering narcotics on the back seat and on the floor board behind the driver's seat. *Id.* at 356. Herder was arrested for

possession with intent to distribute five grams or more of crack cocaine and possession with intent to distribute marijuana. *Id.* at 355. On appeal, he made the same arguments Bilik makes here, *i.e.*, that the Government had not sufficiently established that he knowingly possessed the narcotics.

The Fourth Circuit rejected Herder's arguments because: (1) he was the driver and sole occupant of the vehicle at the time the drugs were found; (2) the canisters in his vehicle that contained narcotics were "within his reach [and] [were] indicative of a high degree of dominion and control over the drugs; and (3) his highly suspicious driving activity provided circumstantial proof of "Herder's knowledge of the narcotics discovered in the vehicle he was operating." *Id.* at 358-59.

The same is true here. Bilik was the driver and sole occupant of the vehicle when Daniels discovered the contraband, the contraband was within reach of the driver's seat, and he was engaged in highly suspicious activity when approached by an officer: he admitted that he was "high" and directed the officer to marijuana inside the vehicle.

In fact, *Herder* is a closer call than Bilik's case, considering that Herder provided evidence that he was not the sole user or owner of the vehicle. *Id.* at 356-57. Conversely, all the evidence here indicated that Bilik was the sole user or owner of the vehicle.[1]

Although Bilik argues that his admission as to possession of the narcotics and the *Leatherman* tool demonstrated that he was not aware of the presence of the knuckles, it is a "well-established principle[] of criminal law" that the Government need not "exclude every reasonable hypothesis other than that of guilt.'" *United States v. Burgos*, 94 F.3d 849, 866 (4th Cir. 1996) (quoting *Holland v. United States*, 348 U.S. 121, 139 (1954)). The Government's

---

[1] Bilik's reliance on *United States v. Blue* is misplaced. There, the defendant was a mere passenger in a vehicle owned and operated by a third party in which contraband was discovered. *See* 957 F.2d at 108. Here, however, no evidence indicated that anyone but Bilik owned or used the vehicle where the knuckles were found.

circumstantial evidence demonstrating that Bilik knowingly possessed the knuckles is sufficient and Bilik's final argument does not support the vacatur of his conviction.

Accordingly, the Magistrate Judge could reasonably find that the totality of the evidence demonstrated that Bilik knowingly possessed the knuckles. Consequently, Bilik has not met the "heavy" burden required to secure reversal of the Magistrate Judge's determinations. *See United States v. Hoyte*, 51 F.3d 1239, 1245 (4th Cir. 1995). The evidence was sufficient for a rational trier of fact to have found Bilik guilty beyond a reasonable doubt.

**V.**

For the foregoing reasons, Bilik's Appeal is **DENIED** and the Conviction is **AFFIRMED**.

A separate Order will **ISSUE**.

/s/
**PETER J. MESSITTE**
**UNITED STATES DISTRICT JUDGE**

**July 23, 2015**